IN THE UNITED STATESa DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREDERICK WARREN, #B58882 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-784-RJD |
| v. ) | |
| ) | |
| LYNNE PITTMAN and ROBERT LYNCH, ) | |
| ) | |
| Defendants. ) | |

## ORDER

**DALY, Magistrate Judge:**

Plaintiff, incarcerated within the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center ("Lawrence), filed this lawsuit pro se and in forma pauperis pursuant to 42 U.S.C. §1983. The Court recruited counsel for him, and his case currently proceeds against Defendants Pittman and Lynch (both doctors) for allegedly violating his Eighth Amendment rights in 2019-2020 by treating his left shoulder pain with deliberate indifference.

This matter comes before the Court on Defendants' Motions for Summary Judgment. Docs. 115, 116, 118, and 119. Plaintiff filed Responses (Docs. 121 and 122) and Defendants filed Replies (Docs. 124 and 12). As explained further, Defendants' Motions are GRANTED.

## Material Facts

In May 2017, Plaintiff underwent surgery on his left arm that involved "left open biceps tenodesis, glenohumeral debridement, and rotator cuff evaluation." Doc. 116-1, p. 43; Doc. 122, ¶5. Plaintiff was in county jail at the time. Doc. 116-1, p. 41. Prior to the surgery, he was informed that sutures or anchors would be used during surgery. Doc. 122, ¶6. Following

surgery, he had increased pain in his left shoulder and bicep.  Doc. 116-1, p. 45.  He transferred to Lawrence in May 2019.  Doc. 116-1, p. 53.

Dr. Pittman was the Medical Director at Lawrence from February 2019-July 2020; she was employed by Wexford Health Sources, Inc. ("Wexford").  Doc. 116-4, ¶2.  Plaintiff first saw Dr. Pittman on July 10, 2019.  Doc. 116-3, p. 39.  Plaintiff told her that he had left shoulder pain for 11 years following an injury from lifting weights.  Doc. 121, ¶10.  Dr. Pittman ordered Tramadol pain medication for eight weeks and for Plaintiff to return to the health care unit in four weeks.  *Id*.  She also ordered an x-ray, which showed "moderate arthritis in the shoulder" and a "metallic foreign body over the proximate left arm which appears to be in the soft tissue, not in the bone. Its significance is unclear."  Doc. 121, ¶11; Doc. 116-3, p. 24.  On August 22, 2019, Dr. Pittman ordered another x-ray of Plaintiff's left shoulder. Doc. 121, ¶14.  The radiologist noted the previously identified foreign object and no significant changes.  Doc. 121, ¶16.

On August 28, 2019, Dr. Pittman told Plaintiff that there was something moving in his left shoulder and biceps and he needed surgery.  Doc. 116-1, pp. 74, 75.  Dr. Pittman's notes indicate that she requested and received approval from Wexford for Plaintiff to see a general surgeon for "removal of surg. clip" and "eval + removal of foreign body left axilla."  Doc. 121, ¶16.  Plaintiff testified that Dr. Pittman further told him that his previous surgeon "left something inside you, which is not supposed to be in there."  Doc. 116-1, p. 81.  At her deposition, Dr. Pittman testified that the decision to remove an object is a surgical decision that she could not make because she is not a surgeon.  Doc. 121-2, p. 13.  On September 18, 2019, Dr. Pittman ordered Tylenol #3 and Robaxin for Plaintiff.  Doc. 116-3, p. 45; Doc. 121, ¶17.

Plaintiff saw Dr. Lynch on September 30, 2019.  Doc. 121, ¶18.  Plaintiff recalls that his visit with Dr. Lynch lasted "no more than 30 seconds."  Doc. 116-1, p. 79.   Plaintiff testified

that he told Dr. Lynch that he was "suing another doctor for messing [Plaintiff's shoulder] up" and Dr. Lynch said "turn around" and provided no treatment or examination to him.  Doc. 116-1, p. 80.   In his consultation note, Dr. Lynch wrote:

> Unable to locate a point of pain/tenderness.  No x-rays or reports available.  Impression: unsure if general surgery would be able to help… it is unlikely that a surgical clip left over from rotator cuff surgery would be causing his symptoms. Suggest orthopedic evaluation.

Doc. 116-3, p. 6; Doc. 122, ¶35.  Dr. Lynch has never been employed or contracted with the IDOC, Wexford, or Lawrence.   He "saw any person who for any reason walked into" the surgical clinic at Lawrence Memorial Hospital, which is where he saw Plaintiff.  Doc. 122, pp. 4-5.  Dr. Lynch was not employed by Lawrence Memorial Hospital; he contracted with a locums company that paid him directly for his work.  *Id*., p. 5.

Plaintiff saw Dr. Pittman five days later.   Plaintiff complained of left upper arm pain.  Dr. Pittman ordered additional x-rays, prescribed Mobic, and changed the times that Plaintiff received Tylenol #3 from 4:00 am and 9:00 pm to 11:00 am and 9:00 pm.  Doc. 116-4, ¶16; Doc. 121, ¶19. The x-ray report stated that foreign body was "not significantly changed."  Doc. 116-3, p. 25.

Plaintiff returned to Dr. Pittman on November 13, 2019.  Doc. 121, ¶22.  She ordered x-rays to be taken in three weeks to determine if the foreign object migrated.  *Id*.  She also prescribed Lidocaine, an anesthetic cream.  *Id*.  Dr. Pittman noted that there was a "palpable nodule prox. Bicep -sub [cutaneous]."  *Id*.; Doc. 116-3, p. 50.  X-rays completed on December 3, 2019, showed "little change." Doc. 121, ¶23.  Plaintiff saw Dr. Pittman on January 3, 2020. She ordered additional x-rays to determine if the object migrated and ordered a thirty-day prescription of Tylenol #3 and a three-month prescription of Robaxin.  Doc. 121, ¶24.  X-rays

taken on January 8, 2020, showed that the object "is again seen in the soft tissues…unchanged in position." Doc. 116-3, p. 27.

On February 21, 2020, Dr. Pittman submitted a request to Wexford for Plaintiff to see an orthopedic surgeon. Doc. 121, ¶26. She renewed Plaintiff's prescription for Tylenol #3 for three months and prescribed Neurontin for six months. *Id*.; Doc. 116-3, p. 102. Five days later, Wexford approved the referral to an orthopedic surgeon. Doc. 121, ¶26. Dr. Pittman was not involved with scheduling (or attempting to schedule) Plaintiff to see an orthopedic surgeon, but she stated in her affidavit that she was generally aware that the COVID-19 pandemic caused delays in scheduling offsite visits. Doc. 116-4, ¶25.

Dr. Pittman saw Plaintiff on April 14, 2020. Doc. 121, ¶27. Plaintiff reported that his pain medication did not "last through the day", so she increased his Tylenol #3 prescription and also prescribed a blood pressure medication to "treat increased blood pressure caused by pain." *Id*. Dr. Pittman saw Plaintiff again on May 19, 2020 and prescribed a trial of the nerve pain medication Pamelor. Doc. 116-3, p. 103; Doc. 121, ¶28. She discontinued Plaintiff's Tylenol #3 prescription. *Id*. This was Dr. Pittman's last visit with Plaintiff. Doc. 121, ¶29. She stopped working as Medical Director at Lawrence on or around July 20, 2020. Doc. 116-4, ¶2.

In October 2020, Plaintiff met virtually with an orthopedic surgeon. Doc. 121, ¶34. The visit lasted five minutes. *Id*. The surgeon reviewed Plaintiff's x-rays (the record does not indicate which ones) and stated in his report that his diagnosis was "impingement syndrome of left shoulder" and he did not recommend surgery. *Id*.

In December 2021, Plaintiff underwent an MRI of his shoulder. Doc. 122, ¶73. He was evaluated by an orthopedic surgeon, Dr. James Liu, in April 2022. Doc. 122, ¶75. Dr. Liu stated in his note that Plaintiff "will need an anatomic total shoulder arthroplasty", but he should not

undergo shoulder surgery while incarcerated due to the "high" risks of "infection, dislocation, and noncompliance with a complex rehab protocol."  Doc. 122, ¶77.

Plaintiff currently experiences pain in his left shoulder and bicep.  Doc. 116-1, p. 20.  He rates the pain as a "10" on a score of 1-10.  Doc. 116-1, p. 20.  Since 2019, he has been taking Gabapentin, 1200 milligrams three times daily.  Doc. 116-1, p. 22.  The Gabapentin lessens his pain to a score of "7" or "8."  Doc. 116-1, p. 21.

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones."  *Brown v. Osmundson*, 38 F. 4th 545, 559-60 (7th Cir. 2022) (internal

citations omitted). To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial" that shows (1) "he had an objectively serious medical need" (2) "which [the defendant] "[knew] of and disregard[ded] a substantial risk of harm." *Id*. at 550. Negligence or even recklessness does not constitute deliberate indifference; the defendant must have shown "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*.

**Dr. Pittman**

For purposes of summary judgment, Dr. Pittman concedes that Plaintiff's shoulder pain was a serious medical need. She contends that no genuine issue of material fact exists regarding whether she disregarded a substantial risk of harm to Plaintiff. The Court agrees.

The record reflects that for approximately one year, Dr. Pittman saw Plaintiff on a regular basis. Plaintiff argues that during that time, the jury could infer she was "persist[ing] in a course of treatment known to be ineffective." *Id.* at 730 (*quoting Walker v. Peters*, 233 F.3d 494, 449 (7th Cir. 2000)). To the contrary, the undisputed evidence shows that Dr. Pittman tried a variety of medications and dosages, and adjusted Plaintiff's administration times. The Eighth Amendment required Dr. Pittman to take "reasonable measures" to alleviate Plaintiff's pain; she was not required to keep him pain free. *Arce v. Wexford Health Sources, Inc.,* 75 F. 4th 673, 681 (7th Cir. 2023) (internal citations and quotations omitted).

Moreover, medication was not the only intervention Dr. Pittman ordered; she also requested and received approval from Wexford for Plaintiff to be seen by a general surgeon and orthopedic surgeon. Plaintiff faults Dr. Pittman's decisions regarding the specialist referrals. A physician may exhibit deliberate indifference if he makes a treatment decision that "is so far afield of accepted professional standards as to raise the inference that it was not actually based on a

medical judgment." *Arnett v. Webster*, 658 F.3d, 751 (7th Cir. 2011) (*quoting Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). First, Plaintiff argues that once he returned to Lawrence with the note from Dr. Lynch that showed Dr. Lynch had no x-rays to review and recommended an orthopedic consultation, Dr. Pittman should have provided Dr. Lynch with the x-rays and/or reports of the x-rays.

Plaintiff also argues that Dr. Pittman should have sent him back to see Dr. Lynch for an "appropriate" evaluation and removal of the surgical clip. Plaintiff insists that Dr. Pittman should have ensured he undergo clip removal surgery because of the forms she completed for Wexford approval of Dr. Lynch's consultation that stated "collegial approved removal of surg. Clip per GS" and "Sched gen surg eval + removal of foreign body left axilla." From these statements, Plaintiff contends, the jury could infer that Dr. Pittman "knew" he needed surgical removal of the object in the films. This argument ignores Dr. Pittman's undisputed testimony: the decision to remove an object from Plaintiff's shoulder was a "surgical" decision and she is not a surgeon. Even if she believed that Plaintiff needed a clip removed from his shoulder, and even if Wexford approved the surgery, she could not order another physician to do so.

Instead of sending x-rays to Dr. Lynch and sending Plaintiff back to see Dr. Lynch to have the clip removed, Dr. Pittman requested and received approval for Plaintiff to see an orthopedic surgeon. No reasonable jury could infer this decision was not based on medical judgment, especially considering Dr. Lynch suggested it. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 462-63 (7th Cir. 2020).

Plaintiff also contends that Dr. Pittman delayed the orthopedic evaluation. Dr. Pittman requested and received approval for the orthopedic evaluation nearly six months after Dr. Lynch suggested it. Deliberate indifference may be inferred if a prisoner's treatment is delayed "for non-

medical reasons, thereby exacerbating his pain and suffering." *Id*. (internal citations and quotations omitted). It is unclear why Dr. Pittman waited six months to refer Plaintiff to the orthopedic specialist; multiple rounds of x-rays were performed during that time so that she could determine whether the object was moving, but the record is silent as to whether she delayed the referral specifically for that reason. Regardless, no evidence indicates that Plaintiff's pain and suffering were exacerbated because of the six-month delay. Two orthopedic surgeons have subsequently recommended no surgery for Plaintiff while he is in prison. Nothing before the Court suggests that an earlier appointment with the orthopedic surgeon would have decreased or alleviated Plaintiff's pain.

Overall, Dr. Pittman is entitled to summary judgment. No reasonable jury could find that she treated Plaintiff with deliberate indifference.

**Dr. Lynch**

The undisputed evidence shows that Dr. Lynch was not a state actor and has no liability in this case under §1983. As the Seventh Circuit has explained,

> [w]hether a medical provider is a state actor is a functional inquiry, focusing on the relationship between the state, the medical provider, and the prisoner….[a] business like Wexford that contracts to provider medical care to prisoners undertakes "freely, and for consideration, responsibility for a specific portion of the state's overall [constitutional] obligation to provide medical care for incarcerated persons,"….and thus acts under color of state law for purposes of §1983. On the other hand, we have held that medical providers who have "only an incident or transitory relationship" with the penal system generally are not considered state actors."

*Shields v.* Illinois *Dept. of Corrections*, 746 F.3d 782, 797-98 (7th Cir. 2014). Nothing in the record suggests Dr. Lynch accepted any responsibility for Illinois' Constitutional obligation to provide medical care to any inmate, including Plaintiff. He had no contractual relationship with

IDOC or Wexford.  He had no direct relationship to Plaintiff, as Plaintiff spent less than 30 seconds with him and Dr. Lynch then "had nothing more to do with [Plaintiff]."  *Id*. at 798.  Summary judgment shall therefore be granted in favor of Dr. Lynch.

## Conclusion

Defendants' Motions for Summary Judgment (Doc. 115 and 118) are GRANTED.  All other pending motions are DENIED AS MOOT.  All pending deadlines and court setting are VACATED.  Plaintiff's claims are DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  September 19, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**